CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

MATTHEW CHANG (CABN 348765)
Assistant United States Attorney

    60 South Market Street, Suite 1200
    San Jose, California 95113
    Telephone: (408) 535-5037
    Matthew.Chang2@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>NAHEED MANGI,<br><br>    Defendant. | Case No. 5:18-CR-00260 EJD<br><br>**UNITED STATES' SENTENCING MEMORANDUM**<br><br>Hearing Date: November 17, 2025<br>Hearing Time: 1:30 P.M.<br>Courtroom:    Courtroom 4, 5th Floor<br><br>Hon. Edward J. Davila |

Defendant Naheed Mangi is scheduled for sentencing before this Court on November 17, 2025, following a trial where a jury found her guilty of two counts of Intentional Damage to a Protected Computer, and one count of Accessing a Protected Computer without Authorization and Obtaining Information. ECF Dkt. No. 159. The government's trial evidence overwhelmingly established Defendant's culpability. In particular, the government's evidence showed that she had been fired, and was angry that she had been fired.

On the evening of August 19, 2013, only a few hours after she was fired for insubordination, the Defendant logged onto a breast cancer clinical trial database and tampered with patient data. She deleted patient information, replaced important patient information with nonsense, and typed insults about her former supervisor. Indeed, the Defendant sabotaged the integrity of the M027782 Velvet Breast Cancer

Clinical Trial Database, and a jury convicted the Defendant on all three counts. ECF Dkt. No. 159. The Defendant's criminal conduct caused Stanford School of Medicine to incur financial damages to remedy the cancer clinical study database, *and* the Defendant's offense caused the potential modification or impairment of the medical examination, diagnosis, treatment, or care of one or more individuals.[1]

For every wrong, the law provides a remedy. Accordingly, the United States respectfully requests the Court impose a ten-month split sentence, comprised of five months of incarceration and five months of home detention. The Government further requests the Court impose a mandatory restitution amount of no less than $10,520.69 to Stanford School of Medicine.

## I.   FACTUAL & PROCEDURAL BACKGROUND

The Presentence Investigation Report contains an accurate and comprehensive description of the charge and conviction, the offense conduct, and victim impact, which the government incorporates by reference. *See* ECF Dkt. No. 188 at 4-6.

## II.   SENTENCING CALCULATION

Trial courts, "while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing." *United States v. Booker*, 543 U.S. 220, 267 (2005); *see also Gall v. United States*, 552 U.S. 38, 51 (2007) (stating that the failure to calculate, or improperly calculating, the guidelines range constitutes a procedural error at sentencing).

As a threshold matter, the United States agrees with Probation that Counts 1-3 be grouped for guideline calculation purposes. ECF Dkt. No. 188 at ¶ 16 (citing USSG §3D1.2(d)). Further, the government also concurs with U.S. Probation's offense level computation, summarized herein:

| | |
|---|---|
| Base Offense Level (USSG §2B1.1(a)(2)) | 6 |
| Specific Offense Characteristics (USSG §2B1.1(b)(1)(B)) | +2 |
| Specific Offense Characteristics (USSG §2B1.1(b)(18)(A)) | +2 |
| Specific Offense Characteristics (USSG §2B1.1(b)(19)(A)(ii)) | +4 |
| Adjusted Offense Level (Subtotal) | 14 |
| Chapter Four Adjustment (USSG §§4C1.1(a) and (b)) | -2 |
| Acceptance of Responsibility | 0 |
| **Total Offense Level** | **12** |

---

[1] Although the Court denied the Defendant's Rule 29 and 33 motions as to Counts 1 and 3, the Court deferred ruling on Defendant's motion as to Count 2. As ordered by the Court, parties timely filed their supplemental briefing as to Count 2 on October 20, 2025, and further motion hearing and oral argument is scheduled for November 17, 2025, the same day as the Defendant's sentencing. ECF Dkt. No. 182.

*Id.* at ¶¶ 17-7. Next, the United States and Probation agree that the total offense level is "12" and criminal history category is "I." *Id.* at ¶ 59. Moreover, the United States and Probation agree that the resulting guideline range is 10 to 16 months of incarceration. *Id.* Finally, the United States agrees with Probation's rejection of Defendant's wording changes and objections to the presentence investigation report ("PSR"), described herein.

   a. **Probation properly rejected Defendant's request to the wording changes to the offense conduct in paragraphs 9, 10, and 11 of the presentence investigation report.**

First, Probation properly rejected Defense counsel's requested wording changes to the offense conduct in paragraphs 9, 10, and 11. ECF Dkt. No. 188 at ¶¶ 3-4 (Addendum to the Presentence Report). The requested changes mischaracterize the facts presented at trial related to the data breach, the laptop seized at the defendant's apartment, and the loss amount. As Probation articulated, the listed paragraphs were unchanged because "the information contained in the paragraphs reflects the evidence presented at trial and the defendant was found guilty by a jury beyond a reasonable doubt." *Id.*

   b. **Probation correctly rejected Defendant's objection to the loss enhancement.**

Second, Probation correctly rejected Defense counsel's objection to the loss enhancement. ¶¶ 5-6 (Addendum to the Presentence Report). The government provided documentation from Stanford School of Medicine that the total loss was no less than $10,520.69. As Probation explained: "Although the jury was not required to determine the loss . . . the evidence provided by the government regarding the loss figure meets the preponderance of the evidence standard required to apply a two-level enhancement pursuant to USSG § 2B1.1(b)(1)(B)." *Id.* Under the facts of this case, the two-point loss enhancement pursuant to USSG § 2B1.1(b)(1)(B) applies.

   c. **Probation accurately rejected Defendant's objection to the two-level enhancement under USSG § 2B1.1(b)(18)(A).**

Finally, Probation accurately rejected Defense counsel's objection to the two-level enhancement under USSG § 2B1.1(b)(18)(A), which applies if the Defendant accessed confidential health information.

The Defense misses the mark for several reasons. First, one of the elements of 18 U.S.C. § 1030(a)(2)(C) include the intent to obtain information from a protected computer, and Defendant "was convicted of this offense beyond a reasonable doubt." ECF Dkt. No. 188 at ¶¶ 7-8 (Addendum to the Presentence Report). Second, even assuming the Defendant intended only to enter comments and information into the breast cancer clinical trial database for which she was not permitted to access following her termination, the law is unequivocal that that accessing and obtaining information for purposes of Section 1030(a)(2)(C) includes "mere observation of the data," ECF Dkt. No. 182 (citing *United States v. Drew*, 259 F.R.D. 449, 457 (C.D. Cal. 2009) (citing S. Rep. No. 99–432, at 6–7 (1986))). Thus, "the act of accessing the confidential information, viewing it, and reading it in order to insert the comments can be considered 'obtaining.'" *Id.* Under the facts of this case, the two-point enhancement pursuant to USSG § 2B1.1(b)(18)(A) applies.

### III.   SENTENCING RECOMMENDATION

Pursuant to the Sentencing Reform Act, 18 U.S.C. § 3553 the Court "shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in" Section 3553(a), and, in so doing, the Court "shall consider," among other things: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established by the guidelines; (5) any pertinent policy statement; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. *See* 18 U.S.C. § 3553(a). In this case, the Section 3553 factors support the sentence recommended by the United States.

Following a two-week jury trial, a jury convicted the Defendant on all three counts. Dkt. No. 159. There is no question that the Defendant's criminal conduct was serious. Mere hours after she was terminated, the Defendant decided to use her own login credentials to access a breast cancer clinical trial database to sabotage the integrity of the clinical study.

As Dr. Mark Pegram testified, the typical patient who signed up to participate in this type of study involved "patients who don't have cancer that is considered to be curable with standard therapy." ECF Dkt No. 183 at 163. For those involved in the M027782 study, it took "a great leap of faith and the patients place their entire confidence in [Stanford's] hands because they have to trust to take such a huge step to do something that is brand new that we don't know what the results are going to be." *Id.* Defendant Naheed Mangi was aware of this fact: The Defendant had worked as clinical research coordinator at Stanford School of Medicine, and with the same patients enrolled in the M027782 study, for approximately eleven (11) months before her termination. Exhibit 1.

At trial, the jury considered evidence that the Defendant was continuously in the database ***for over one hour.*** Exhibit 008 and 008A; *see also* ECF Dkt. No. 153 (emphasis added). Specifically, on August 19, 2013, from 7:48 p.m. to 8:56 p.m. (Pacific Time), the Defendant deleted patient information and replaced it with numerous negative comments about Ms. Chang who was the Defendant's supervisor and had fired the Defendant mere hours before the database intrusion. *Id.*, *see also* Exhibit 25B. Below are some examples of the Defendant's alterations to the database:

- On the adverse events screenshot, the user typed in "doctor too stupid." *Id.*; Exhibit 025B-2.

- On one of the pop-up description boxes, the user typed in "Pei-Jen Melinda telli wants Mark Pegram fired from Stanford." *Id.*; Exhibit 025B-11.

- On the Informed Consent screenshot, the user typed in "51-50-PJC[2]," and the reason for the

---

[2] Testimony from Detective Scott Floerchinger informed the jury that based on his training and experience as a Stanford Department of Public Safety officer, "51-50" was another term for an involuntary psychiatric hold for people experiencing mental health crises. The Court took judicial notice and instructed the jury of same. ECF 152 and 157 (Instruction No. 13).

UNITED STATES' SENTENCING MEMO.                     5
5:18-CR-00260 EJD

modification was "Pei-Jen Chang request." *Id.*; Exhibit 025B-005.

During trial, the government presented evidence wherein the Defendant admitted she was "very upset;" "distraught," and "hurt" about her termination. *Id.*; *see also* ECF 153-54. While those emotions are normal, the Defendant's retaliatory criminal conduct was anything but. The fact that the unauthorized access occurred after she was terminated from her employment for insubordination is evidence that her actions were retaliatory in nature, particularly as she used her unauthorized access, in part, to leave negative notes about the supervisor who had fired her. ECF Dkt. No. 188 (Sentencing Recommendation, Justification). On the topic of retaliation, [the Defendant] also had a prior arrest in 1995 where she sent numerous letters and harassing phone calls against a Stanford medical resident and his girlfriend due to her unhappiness over their relationship. *Id.* As Probation accurately noted: "It appears [the Defendant] has a history of lashing out at others when she feels things are not going her way." *Id.*

As mitigating considerations, the government acknowledges that this appeared to be an isolated incident and there is no evidence that the Defendant has engaged in similar conduct since then. *Id.* Further, as Probation notes, the Defendant is 70 years old, unemployed, reliant on Social Security income, and has maintained her current rental apartment for the past 30 years. *Id.* Additionally, although Probation cited that the instant offense conduct occurred over twelve years ago, at least part of delay is attributed to the Defendant. *Id.* Indeed, as one example, the Defense filed a motion to continue the jury trial on the eve of trial. ECF at 145. Moreover, these mitigating considerations do not account for how the Defendant has not once accepted responsibility for her criminal conduct. Ultimately, these considerations are not enough to overcome the other aims of Section 3553.

As noted earlier, the Defendant's total offense level is "12" and criminal history category is "I." As the PSR explains, during the last five fiscal years, there were 744 defendants whose primary guideline was §2B1.1, with a Final Offense Level of "12" and a Criminal History Category of "I." *Id.* ¶ 77. For the 374 defendants (50%) who received a sentence of imprisonment in whole or in part, the average length of

imprisonment imposed was 7 month(s) and the median length of imprisonment imposed was 6 month(s). *Id.* For all 744 defendants in the cell, the average sentence imposed was 5 month(s) and the median sentence imposed was 3 month(s). *Id.* Thus, a ten-month split sentence, comprised of five months of incarceration and five months of home detention would be consistent with the average sentence imposed upon similarly situated defendants.

Further, "because the guideline range falls into Zone C of the Sentencing Table, the minimum term of imprisonment may be satisfied by (1) a sentence of imprisonment; or (2) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention, provided that at least one-half of the minimum term is satisfied by imprisonment." USSG §5C1.1(d). ECF Dkt. No. 188 at ¶ 59. The government's recommendation of a ten month split sentence—comprised of five months of incarceration and five months of home detention—not only falls on the low-end of the guidelines, this recommended sentence is sufficient but not greater than necessary to comply with 18 U.S.C. § 3553.

Finally, Probation and the United States agree that Defendant should be ordered to pay restitution of $10,520.69 to Stanford School of Medicine.

IV.   **CONCLUSION**

Consistent with the United States Sentencing Guidelines, the United States recommends the Court impose a ten month split sentence, comprised of five months of incarceration and five months of home detention, with restitution of no less than $10,520.69 to Stanford School of Medicine.

DATED: November 10, 2025                    Respectfully submitted,

                                            CRAIG H. MISSAKIAN
                                            United States Attorney

                                            /s/

                                            _____
                                            MATTHEW CHANG
                                            Assistant United States Attorney